**IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION**

| | |
|---|---|
| United States of America, | Case No. 3:95-CR-0772-01 |
| Plaintiff/Respondent, | Judge James G. Carr |
| v. | **ORDER** |
| Jose C. Rodriguez, Jr., | |
| Defendant/Petitioner. | |

Pending are the Defendant's Motion for Compassionate Release under the First Step Act of 2018 (Doc. 941) and Motion to Reduce Sentence under Amendment 821 (Doc. 942). The Federal Public Defender filed a Notice of No Intent to Supplement the Motion for Sentence Reduction (Doc. 944). The Government filed its Response in Opposition to both of Defendant's Motions. (Doc. 946, Doc. 947).

Defendant moved for an extension of time to file a Supplemental Motion or Notice re: Compassionate Release (Doc. 948), which I granted. (Non-Document Order 03/05/2024). Defendant moved on March 18, 2024 for leave to file the document under seal (Doc. 952), which I granted the next day. (Doc. 953). Defendant filed his sealed Supplemental Motion immediately thereafter. (Doc. 954). The Government filed its Opposition under Seal (Doc. 957) on April 18, 2024. And on May 2, 2024, Defendant filed his sealed Reply. (Doc. 959).

For the reasons that follow, I deny the Defendant's Motions (Docs. 941, 942, 954).

## Background

On November 13, 1996, Defendant was convicted by a jury of Conspiracy, Continuing Criminal Enterprise, and five counts of Unlawful Use of a Communication Facility. (Doc. 488,

Doc. 489; Doc. 946, pgID 2147).[1] The convictions arise from Defendant's leadership of a long-standing, primarily family-based, criminal enterprise that engaged in armed robberies and drug distribution through a network of dealers. (Doc. 947, pgID 2153, citing, Doc. 920-1, pgID 326).

After a slew of post-trial motions and objections, Defendant was sentenced by the late Hon. John W. Potter on July 21, 1997 (Doc. 671) and resentenced on August 27, 1997 (Doc. 691) to a total term of 465 months imprisonment. (Doc. 704 – Judgment 09/03/1997). He is serving out his sentence at FCI Loretto, with a minimum release date of November 10, 2029. (Doc. 941, pgID 2054).

This case was reassigned to me on March 29, 2005. Prior to reassignment, Defendant had unsuccessfully attacked his conviction and sentence through various appeals and motions for post-conviction relief. (Docs. 554, 826, 831, 842, 882, 907).[2] Since taking over his case, I too have denied Defendant's challenges in the forms of a Motion under the First Step Act (Doc. 912); Motion to Reduce Sentence for Immediate Compassionate Release (Doc. 914); and Motion for Compassionate Release - Home Confinement (Doc. 938). (See, Doc. 936 – Order (11/06/2020) and Doc. 940 – Order (08/29/2022)).

**Discussion**

Defendant now makes his fourth, fifth and sixth attempts - in the span of four years - at premature release from custody. (Doc. 941 (01/02/2024), Doc. 942 (01/02/2024), Doc. 954 (03/19/2024)). Defendant seeks compassionate release based upon his poor health and also

---

[1] The Conspiracy Count was later dismissed by Judge Potter. (Doc. 667).

[2] (Doc. 554 – 01/29/97 – Order denying, among other motions, Motion for New Trial, Motion for Reconsideration, Motion to Vacate Conviction); (Doc 831 – 11/13/2000 – Appeal Order of Sixth Circuit affirming judgment of District Court); (Doc. 842 – 02/12/2000 – Order denying Writ of Certiorari); (Doc. 882 – 01/10/2003 Appeal Order dismissing Notice of Appeal for want of prosecution); (Doc. 907 – 10/30/2006 – Appeal Order from USCA for the 6th Circuit denying Application for Leave to file Second or Successive 2255 Motion).

requests a sentence reduction under a recent amendment (821) to the U.S. Sentencing Guidelines. I will say what I said previously said, with additional observations, the Motions must be denied.

### 1. Defendant's Motion to Reduce Sentence under Amendment 821 & 18 U.S.C. § 3582(c)

Defendant filed a Motion for Sentence Reduction (Doc. 942), which mirrors his Motion for Compassionate Release. (Doc 941, discussed *infra*.). Defendant seeks a revised sentence to time-served. (Doc. 942, pgID 2103). In support, he relies on his poor health and the § 3553(a) factors. He states he has "strived to improve educationally and behaviorally," pointing to the "many programs…geared towards re-entry, personal development, and job skill training," which he has undertaken. (*Id.* at 2103-4; Doc. 942-1).

In opposition, the Government argues Defendant does not qualify for a reduced sentence. (Doc. 946, Doc. 957). I agree.

Namely, he is not eligible for a reduction in his Criminal History Category. (Doc. 946, pgID 2150). This is so because Defendant did not receive "Status Points." Instead, the two points added to his score were "Recency Points,"[3] which are not covered by Amendment 821. Thus, Defendant's Criminal History Score remains 14, and his Criminal History Category remains a VI. (PSR, p. 25). Moreover, he was found to be a Career Offender. And thus ineligible, *ab initio,* for relief under Amendment 821. (*Id.* at 21).

Therefore, I deny Defendant's Motion for Sentence Reduction.

### 2. Defendant's Motion and Supplemental Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i)

---

[3] Recency Points, which were eliminated by an Amendment to the U.S. Sentencing Guidelines in 2010, were outlined in the prior U.S.S.G. § 4A1.1(e). Under this provision, points were added if the defendant committed the offense less than two years following release from confinement on a sentence counted under U.S.S.G. §§ 4A1.1(a) or (b). See, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100818_Recency_Report.pdf

As the Government's acknowledges, it appears more appropriate to view this case as one for compassionate release. Even then, I simply find no basis for granting his present Motion and Supplemental Motion. As the Government argues (Doc. 947, Doc. 957); as I found four years ago (Doc. 936, pgID 2030); and as I find today, Defendant has failed to show "extraordinary and compelling reasons" warranting release.

I did not dispute then, and I do not dispute now, that Defendant is in poor health. He suffers from coronary artery disease, congestive heart failure, chronic angina, cirrhosis, neuropathy, and chronic low back pain due to degenerative disc disease and spinal stenosis. (Doc. 941, pgID 2055, Doc. 954, pgID 2173-75, Doc. 959, pgID 2204-5).

I can surmise that his condition probably has worsened over the past four years. Indeed, he attaches a large number of medical records to his Motions. (Doc. 941-1, Doc. 954-1). He also points to the fact that the institution's medical providers recommend his release. (Doc. 941, pgID 2055). He also argues the prison's Clinical Director told Defendant, "there is nothing more we can do for you." (*Id.*).

I acknowledge the possibility that Defendant could die in prison. I further recognize that the Sentencing Commission expanded the grounds for seeking compassionate release.[4]

---

[4] Extraordinary and compelling" medical reasons are now defined in U.S.S.G. § 1B1.13(a):
  (A) The defendant is suffering from a terminal illness
  (B) The defendant is –
      (i) suffering from a serious physical or medical condition,
      (ii) suffering from a serious functional or cognitive impairment, or
      (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide selfcare … and from which he or she is not expected to recover.
  (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
  (D) The defendant presents the following circumstances -

But indication that Defendant is "Elderly with a Medical Condition" is insufficient. (Doc. 959, pgID 2204, citing 05/17/2023 RIS Medical Summary). Defendant's is not terminally ill. He is *at risk* of "sudden death," but anyone of advanced age in poor health is, and that risk follows him out of prison. Importantly, Defendant is able to support major life functions with minimal assistance.[5] And the BOP's own General Counsel denied his request, finding Defendant can perform his activities of daily living independently. (Doc. 941-1, pgID 2084-85).

Furthermore, when weighing the §3553(a) factors, it is even more clear that Defendant is not entitled to compassionate release. The nature and circumstances of the offenses for which Defendant was sentenced, coupled with his history and personal characteristics, weigh heavily against release. I previously explained at length my reasons for denying Defendant relief to his prior motions and incorporate those findings as part of this decision. (Doc. 936, Doc. 940). I found then – and I find now – that those factors justify – indeed, in my view – denial of his current Motion and Supplemental Motion for Compassionate Release.

Examining the nature of the offenses in this case, Defendant was the head of a nine-person DTO involved in serious crimes that spanned nearly two decades before his arrest. Defendant organized and managed this DTO, members of which included his attorney; his girlfriend; his son, daughter, and stepson (recruiting them while they were mere teenagers); his

---

(i) The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure …; and
(iii) such risk cannot be adequately mitigated in a timely manner.

[5] Reviewing the IADL for Defendant, he has the ability to use the telephone and computer; can shop, do laundry, prepare meals/snacks for himself, and eat independently. He is responsible for his own finances and taking medications. He can bathe/shower independently and is well groomed. He can move about the institution and travel independently. In fact he scored 1/6 and 3/9, and a lower score reflects more independence. (Doc. 941-1 pgID 2087-88).

niece and her boyfriend; and his jail-confederate, who assisted Defendant's narcotics operation both in and out of prison. (PSR, pp. 2-6). Not only did this DTO distribute mass quantities of narcotics, some members, including Defendant, committed very dangerous armed robberies, the product of which aided in funding the drug trafficking side of the business. (*Id.* at p. 5, ¶9).

After indictment, Defendant was convicted by a jury of multiple accounts. At the time of sentencing, Defendant's Total Offense Level was a 43, the highest possible. (PSR, p. 21, ¶96). Deemed a career offender, with a disturbing criminal history, beginning at age 12 and including multiple offenses into adulthood, Defendant was also placed in the highest Criminal History Category of VI. (*Id.* at 25). Defendant was consequently facing a statutory and guideline sentence of life imprisonment. (*Id.* at 27, ¶ 134-8). These facts weigh heavily against release.

Defendant's history and behavior also warrant denial of release. As just a snapshot, in 1989, during the height of the DTO, Defendant beat and stabbed his co-defendant girlfriend, Colleen Kelly, two months after both were indicted on drug charges. (*Id.* at 13, ¶52 ). After their co-defendant, Attorney Neller, "persuaded" her, Ms. Kelly later recanted. (*Id.*, ¶¶53-56). And, after the drug trial concluded in September 1989 and just before the jury reached a verdict, Defendant and Ms. Kelley fled the jurisdiction. (*Id.* at 14, ¶57). Both were apprehended and placed in custody, where Defendant remained through his indictment in this case. (*Id.*, ¶58).

Defendant's instant requests also fail to address certain other factors that I found militated and continue to militate against Defendant's release now – and potentially ever – from prison. Entirely missing from his prior and current motions is any indication that he comprehends and acknowledges the harm he and his confederates caused to our community, particularly to the drug addicts directly and others indirectly. He admits he has done "some bad things" in his life (Doc. 941, pgID 2060, Doc. 938, pgID 2042), but this is hardly an expression of the extent and

6

understanding of his crimes and their enduring consequences. In a word, Defendant is full of woe. But the woe is for himself, not for the harm he did to others and to the community.

The sentence issued reflects the seriousness of the offense and was intended to afford adequate deterrence and importantly, to protect the public from further crimes. In support of his Motion, Defendant asserts that if released, he will not be a danger to anyone. (Doc. 941, pgID 2060-61). He points to his good behavior, excellent work record, and that fact he has received maximum earned time credit in support of his arguments for release. (Doc. 941, pgID 2055).

I acknowledge Defendant, now age 69, is currently housed at FCI, Loretto, a minimum security facility, where he is classified as a "[l]ow security level." (Doc. 941, pgID 2054, Doc. 954, pgID 2175). Given his health, it is likely that he probably could not cause harm himself. But that misses an important point. Namely, that his DTO was comprised of family, friends, and even his attorney. Given the violent nature of the DTO's activities and Defendant's past inclinations, I cannot rule out the risk that - at Defendant's direction - others might wreak the harm that Defendant, himself, could not undertake.

Finally, as I have indicated previously and feel no differently today: of unique and great import to me is Defendant's continuing silence about the fate of Cynthia Anderson.[6] Police interviewed Defendant in 2001 after he claimed to have knowledge about Ms. Anderson's murder. He indicated that he had spoken with two persons responsible for her death and claimed he knew where her body was. (Doc. 927, pgID 4). He was unwilling to disclose his information unless his son/co-defendant, Jose Rodriguez III, could have his sentence reduced. He also wanted

---

[6] On August 4, 1981, during the period of the conspiracy, Cynthia Anderson, legal secretary for Rodriguez's co-conspirator, lawyer Richard Neller, disappeared. Presumed murdered, to my knowledge, Ms. Anderson's body has not been found.

7

placement in the witness protection program for himself. When the Government rejected this offer, Defendant declined to talk and has remained silent to this day. (Doc. 936, pgID 2034-35).

I will be blunt. Defendant does not come before me with clean hands. But he seeks the ultimate in equitable remedy – compassionate relief – the most relief any Court can ever give to a sentenced criminal. As I found in denying Defendant's prior motions for release:

> … I look for evidence that he is regretful, remorseful, and rehabilitated. I find, to an extraordinarily compelling degree, no sign in the record that Jose Rodriguez, Jr. manifests any of those essential qualities.
>
> Had Rodriguez shown some measure of compassion in 2001 for Cynthia Anderson's family; had he told the police then what he professed to know, he now would have offered at least some reason to consider whether to grant his motion.
>
> Seeking compassion from me, he should, when asked, have had some of his own. He has not and still does not.
>
> As the record stands, Rodriguez is unworthy and undeserving of compassionate release. In that record I find no reason to grant, and compelling reasons to deny, his motion for compassionate release.

(Doc. 936, pgID 2038). I remain steadfast to this view.

Implicit in any compassionate release request is a call for the Judge to be merciful. To be attentive to the condition of a largely incapacitate and long incarcerated elderly fellow human. Defendant once sought to bargain with the Government. That the Government would not do so was its choice. Now he wants, under the circumstances and in the condition in which he finds himself, to bargain with me. So long as Defendant remains unwilling to talk and relieve the anguish of Ms. Anderson's survivors, his calls for compassion on my part fail.

With respect to the § 3553(a) factors, as to his personal history and characteristics, I am firmly convinced Defendant, when he attempted to bargain with the Government over twenty years ago for himself and his son, had details about the disappearance of Cynthia Anderson, a

young legal secretary just beginning her adult life. Afterall, anyone with sense would not attempt to bargain with the FBI unless he can make good on the offer. But Defendant steadfastly refuses to tell. His silence intensifies and perpetuates the anguish of Ms. Anderson's family and friends, who undoubtedly continue to wonder what happened on that fateful day in August of 1981.

The community deserves to know what Defendant knows. His decades in prison have failed to fulfill their most fundamental purpose: rehabilitation. Under these circumstances, release would be irredeemably unjust. When accounting for the core purpose of public and private deterrence, release of this Defendant would reward him, as well as other criminals, who refuse to cooperate with the Government unless it is on their terms. That alone justifies what I have previously done and do today – deny Defendant's requests for release.

If I have not made myself crystal clear, I will so today, Defendant's personal history and characteristics render him ineligible for compassionate release.

## Conclusion

Simply put:

Defendant does not qualify for a sentence reduction under Amendment 821.

And I do not find Defendant's medical reasons for seeking release to be "extraordinary and compelling." Moreover, compassionate release is an act of grace, not right. It can be earned through atonement. Until the time Defendant demonstrates true rehabilitation and remorse for not only his crimes of conviction, but compassion for Ms. Anderson's survivors, or until the time of his release in 2029, Defendant will remain where he is: incarcerated.

For the foregoing reasons, it is hereby

ORDERED THAT:

1.     The Defendant's Motion for Compassionate Release (Doc. 941) and Supplemental Motion for Compassionate Release (Doc. 954) under 18 U.S.C. § 3582(c)(1)(a)(i) and the First Step Act be, and the same hereby are, **denied.**

2.     The Defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the U.S. Sentencing Guidelines (Doc. 942) be, and the same hereby is, **denied.**

SO ORDERED.

/s/ James G. Carr
Sr.. U.S. District Judge